UNITED STATES DISTRICTCOURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| POLLY SUE FISK,<br><br>      Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of the<br>Social Security Administration,<br><br>      Defendant. | CAUSE NO.: 2:19-CV-174-TLS |

**OPINION AND ORDER**

Plaintiff Polly S. Fisk seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for supplemental security income. The Plaintiff argues that the Administrative Law Judge (ALJ) made several errors in formulating his residual functional capacity (RFC), including the weight given to opinion evidence, the analysis of subjective symptoms, as well as cherry picking and misinterpreting medical evidence. For the reasons set forth below, the Court reverses the decision of the Commissioner and remands for further proceedings.

**PROCEDURAL BACKGROUND**

On December 27, 2016, the Plaintiff protectively filed an application for supplemental security income, alleging disability beginning July 1, 2015. AR 180, 181, 196, ECF No. 9. The claim was denied initially and on reconsideration. *Id.* at 81, 95. The Plaintiff requested a hearing, which was held before the ALJ on October 12, 2018. *Id.* at 28, 113-14. On October 29, 2018, the ALJ issued a written decision and found the Plaintiff not disabled. *Id.* at 10–22. On May 10, 2019, the Plaintiff filed his Complaint [ECF No. 1] in this Court, seeking reversal of the Commissioner's final decision. The Plaintiff filed an opening brief [ECF No. 14], the

Commissioner filed a response brief [ECF No. 20], and the Plaintiff filed a reply [ECF No. 21].

**THE ALJ'S DECISION**

For purposes of supplemental security income, a claimant is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 416.920. The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 416.920(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff has not engaged in substantial gainful activity since December 27, 2016, the application date. AR 12.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 416.920(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar spines, osteoarthritis, chronic and central pain syndrome, Hepatitis C, and arthritis. AR 12.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." 20 C.F.R. § 416.920(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled

without considering age, education, and work experience. *Id*. § 416.920(a)(4)(iii), (d). Here, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listing, indicating that she considered Listings 1.02, 1.04, and 5.05. AR 16-17.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 416.920(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) [with] exceptions. Specifically, the claimant is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday. She is never to climb ladders, ropes or scaffolds, but is occasionally able to climb ramps and stairs, and balance, stoop, kneel, crouch and crawl. She is frequently able to finger, handle and feel objects with her bilateral upper extremities. Last, the claimant is never to be exposed to unprotected heights or moving mechanical parts.

AR 18.

The ALJ then moves to step four and determines whether the claimant can do her past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). In this case, the ALJ found that the Plaintiff is able to perform her past relevant work as a case aide. AR 22. Therefore, the ALJ found that the Plaintiff has not been under a disability since December 27, 2016, the date the application was filed. *Id.* at 22. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. §§ 404.1512, 416.912.

The Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals

Council subsequently denied review. AR 1-6. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539 (quotations omitted); *see also Moore*, 743 F.3d

at 1121 ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

In this appeal, the Plaintiff argues that the ALJ erred in formulating the Plaintiff's RFC by failing to properly weigh medical opinions; by failing to properly assess her RFC, specifically with regard to grip strength and limitations in concentration, persistence, and pace; and by failing to properly analyze subjective symptoms. The Court finds that remand is required for a proper consideration of the medical evidence that the ALJ relied on in weighing medical opinions.

The Residual Functional Capacity ("RFC") is a measure of what an individual can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. § 416.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995); *see also Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2,

5

1996). "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. at *3.

The relevant evidence includes medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The Court considers each of the Plaintiff's arguments in turn.

Throughout the opening brief and included in multiple arguments, the Plaintiff maintains that the ALJ mischaracterized evidence of her enrollment in college classes. The ALJ dismissed the medical opinions of nurse practitioner Mr. Washington and treating psychologist Dr. Anissa Rivers, in part because the ALJ found that the Plaintiff was in school and claimed to be doing well. AR 14, 21. Specifically, the ALJ noted that the Plaintiff "was in college attempting to obtain her Bachelors of Science in International Business since at least August 2016, which is an aggressive program." *Id.* at 14. The Plaintiff alleges that the ALJ ignored the evidence indicating her struggles in school and her limitations.

Although the Plaintiff did go back to college to obtain her bachelor's degree, the record indicates that she did not go to school full time and that she struggled to maintain concentration. She was "just in the first couple of classes" working towards her degree, and she was only enrolled in one class when she was forced to withdraw due to kidney failure and depression. *Id.* at 36–37. She had to drop out due to severe kidney complications, which required her to

discontinue her psychiatric medication which in turn led to a suicidal depressive episode. *Id.* at 36, 43, 565, 617, 619, 655. The Plaintiff was in the hospital for three months, prompting her withdraw from school. *Id.* at 571. The Plaintiff also testified that, although she had an accommodation form filled out by her physician, she had been unable to receive any accommodations. *Id.* at 37, 1009–13.

The ALJ did not consider any of the Plaintiff's struggles in school or the fact that she was only enrolled in one class at a time when the ALJ found that the Plaintiff's ability to attend school indicated that she was not as limited as alleged. The Commissioner asserts that the ALJ did consider the Plaintiff's struggle with attendance and exacerbation in psychiatric symptoms. However, the Commissioner reasons that the Plaintiff's symptoms resolved after her hospitalization, and, therefore, the ALJ's finding that the Plaintiff was able to participate in an "aggressive program" was proper. This argument is illogical and fails to address the evidence in the record. The Plaintiff's improvement in symptoms has no bearing on the ALJ's misrepresentation that the Plaintiff was doing well in school and was working on an aggressive program prior to her hospitalization. The medical evidence shows that the Plaintiff had only just begun the program, was forced to drop out of the one class she was enrolled in due to her health conditions, and subsequently requested accommodations. *Id.* at 36–37, 43, 571, 565, 617, 619, 655, 1009–13.

The ALJ cites 15 pages of records in finding that the Plaintiff was doing well in school. AR 13 (citing AR 413–27). However, those medical records indicate that while the Plaintiff was attending school due to increasing functional levels in August of 2016, she was complaining of attention problems in school despite her attention medication. *Id.* at 414–15. In December 2016 she continued to complain of struggling with attention in school. *Id.* at 416–17. Nowhere in the

7

15 pages of evidence referenced by the ALJ does it say that the Plaintiff "admitted . . . that she did well in school." *Id.* at 12. While the records do indicate increased functioning that led to the Plaintiff starting school, they also indicate increased attention problems during classes. *Id.* at 414–17. The ALJ then cites 42 pages of evidence to support the finding that the Plaintiff continued to do well in school. *Id.* at 13–14 (citing AR 527–68). In those 42 pages, the Plaintiff reports doing well in school twice, but the Plaintiff also reported struggling with concentration and needing extra time in class to complete tasks. *Id.* at 561, 563. The ALJ mentions this evidence in passing at step two but fails to discuss it or properly analyze it elsewhere in the opinion. *Id.* at 13.

When discussing the Plaintiff's limitations in understanding, remembering, or applying information, the ALJ stated that "the claimant was attending college most of the time since her application date with a difficult major of international business until her hospitalization in 2018." *Id.* at 15. However, there is no evidence that the Plaintiff was attending classes full time, and the ALJ fails to discuss the Plaintiff's difficulties in taking classes. The ALJ's characterization of the evidence paints a picture that the Plaintiff attended full time college for her degree, rather than taking a single class at a time while struggling to complete tasks in a timely manner. The ALJ then stated that, "[c]ontrary to hearing testimony that she did not complete a class and did not do well in school, she admitted to doing well while in college to her medical providers." *Id.* at 15. This is also not a fair characterization of the evidence. The Plaintiff in fact did not complete a class due to her kidney injury in 2018, as she was forced to withdraw when she was hospitalized for three months. *Id.* at 36–37. The ALJ incorrectly found that the Plaintiff's statement that she was doing well contradicted her statement that she did not complete a class. Moreover, the Plaintiff only reported doing well in school twice in the medical record, yet the medical record

8

contains multiple notations that the Plaintiff reported increased concentration struggles in school. *Id.* at 414–17, 561, 563.

In discussing the Plaintiff's limitations regarding concentration, persistence, or pace, the ALJ maintained that the Plaintiff's "ability to be a full-time student in college and do well (as mentioned to her psychiatrist) is evidence that she has a mild limitation in this domain." *Id.* at 15. However, as discussed above, there is no evidence that the Plaintiff was attending school full time. On the contrary, she testified to having only taken a few classes, that she was only enrolling in one class at a time, and that she was forced to withdraw due to her kidney injury and hospitalization. *Id.* at 36–37. The Commissioner's assertion that the Plaintiff's conditions improved after her hospitalization in 2018 cannot overcome the ALJ's error in finding that the Plaintiff was doing well with a full-time college schedule prior to her hospitalization. The record simply does not support such a finding. The ALJ has impermissibly mischaracterized evidence that she then used to support her decision. This error affects multiple areas of the ALJ's decision. It affects the decisions made at step two, the RFC findings, the subjective symptoms analysis, and the weighing of medical opinions. The ALJ relied on this mischaracterization of the evidence throughout the decision. Such an error requires remand.

Similarly, the ALJ failed to properly consider why the Plaintiff missed scheduled therapy sessions. The ALJ found that the failure to attend therapy suggested her impairments were less severe than the Plaintiff alleged. *Id.* at 14. However, the ALJ did not consider the reasons that the Plaintiff may have missed treatments as required by SSR 16-3p. At times, the Plaintiff was living in her car. *Id.* at 19. The Plaintiff also stated that she didn't like to drive and preferred to take public transportation. *Id.* at 18, 35. There are a multitude of reasons why she may not have been able to attend scheduled appointments, yet the ALJ did not inquire as to those reasons, and

instead assumed that the Plaintiff did not attend treatment because she did not require treatment. This is improper, as an ALJ may not make inferences about a claimant's impairments from a failure to receive treatment unless the ALJ explores that claimant's explanations for the lack of care received. *See Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("[A]n ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference . . . . The claimant's 'good reasons' may include an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects."); SSR 96-7p, 1996 WL 374186 at *7 (July 2, 1996) ("An ALJ must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide."). The ALJ did not do so here.

The Court finds that the ALJ improperly discussed the Plaintiff's college work and her treatment history, both of which were then repeatedly relied on across multiple portions of the decision. Because the Court is remanding on these issues, it need not address the remainder of the Plaintiff's arguments.

## CONCLUSION

For the reasons stated above, the Court GRANTS the relief sought in the Plaintiff's Brief [ECF No. 14] and REVERSES the decision of the Commissioner. The Court REMANDS this matter for further proceedings consistent with this Opinion.

SO ORDERED on February 5, 2021.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

10